UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**FRANCISCO VASQUEZ #634805**     **CASE NO. 6:18-CV-00048 SEC P**

**VERSUS**     **UNASSIGNED DISTRICT JUDGE**

**S W MCCAIN**     **MAGISTRATE JUDGE WHITEHURST**

### REPORT AND RECOMMENDATION

Pro se petitioner Francisco Vasquez ("Vasquez"), an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on January 11, 2018. Petitioner attacks his 2016 conviction for molestation of a juvenile, in violation of La. R.S. 14:81.2, and the subsequent twenty year sentence imposed thereon by the 15th Judicial District Court, Lafayette Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

*Statement of the Case*

I.     **Factual Background**

The facts, as set forth by the Louisiana Third Circuit Court of Appeal, *State v. Vasquez-Ramirez*, 2016-325 (La. App. 3 Cir. 12/28/16) 210 So.3d 521, 523-26, are as follows:

Alejandra Hargrave, a teacher at Ridge Elementary School in Duson, Louisiana, noticed that the victim, Y.M.R., and her sister were absent from school for three weeks before Easter 2014. When Mrs. Hargrave learned the girls were at their aunt's house in Pennsylvania, she contacted the aunt, the girls' mother (who had been deported to Guatemala), and a lawyer about obtaining guardianship of the girls. When the girls' mother signed the paperwork, Mrs. Hargrave and her husband went to Pennsylvania to get the girls. The girls returned to Louisiana the last week of May 2014. Sometime after the girls returned, Mrs. Hargrave noticed a yellow fluid on the victim's underwear and noticed the victim was "itching all the time." The victim's sister told Mrs. Hargrave that the victim was sexually molested by a man at their old house.

When Mrs. Hargrave asked the victim, the victim said she was raped by a man named "Francisco." Mrs. Hargrave called the girls' mother in Guatemala and learned that Francisco's full name was Francisco Vasquez–Ramirez. According to Mrs. Hargrave, the victim said Francisco touched her vagina and "butt" with his fingers and penis. The victim told Mrs. Hargrave the touching started when she was in the second grade, which would have been in 2013. Mrs. Hargrave called the police.

Detective George Crowder with the Lafayette Parish Sheriff's Office testified that the victim told him Francisco touched her vagina every day when she and her sister came home from school. Detective Crowder witnessed the victim's Hearts of

Hope interview, at which time the victim gave the same or similar statements to the interviewer.

The victim's interview took place at Hearts of Hope on August 27, 2014. The victim was eight years old at the time of the interview. The victim stated that before her present living arrangement, she lived with a lot of adult men in one house, and every day when she returned from school, one of the men touched her bottom. The victim said the man's name was Francisco, and he would touch her with his "pee pee" underneath her clothes and inside her bottom. According to the victim, it happened more than one time—every day when she came home from school. The victim's sister would also be in the room. When asked if Francisco touched her with any other part of his body, the victim said, "No." Later in the interview, the victim said Francisco used his hand to touch her in her "front bottom" and "back bottom." When asked if Francisco did anything else to make her feel uncomfortable, the victim said he kissed her on her mouth twice. At trial, the victim identified the Defendant as the Francisco that had done the things she described in her Hearts of Hope interview.

In the interview, when asked if anyone else tried to do something to her, the victim said the brother of her mom's boyfriend did the same thing to her as Francisco. The victim said it was easier to call this other person "F." When asked if "F" did the exact same thing to her as Francisco or something different, the victim said

3

something different. The victim also said that "F" did these things to her at the same house where Francisco touched her. When asked what part of "F's" body touched her, the victim said the same as Francisco—inside her bottom and her front bottom. Again, only her sister saw this happen. According to the victim, her mom was in Guatemala when this happened. The victim said that "F" was on television and was suspected of doing the same thing to other kids.

On March 30, 2015, an interpreter was appointed for the Defendant and jury selection began. On cross-examination at trial, the victim explained that before she moved to Duson, Louisiana, she lived in North Carolina with her biological mom (Aldalena) and her biological dad (Tierfalo). According to the victim, her mom left her biological father, but she did not know why. When the victim moved to Duson in 2012, Orbelio (her mom's boyfriend) and Jaime (a male), lived in the house with her. The victim did not remember if the Defendant lived in the house at that time. Between 2012 and 2014, Felencio (the brother of her mom's boyfriend) lived in the house. When specifically asked if the Defendant was living in the house at any point, the victim said he was already living in the house when she arrived in 2012. Although the victim did not know the Defendant's name at that time, she later learned his name was Francisco Vasquez–Ramirez. The victim testified that her mom's boyfriend (Orbelio Ramirez) was the Defendant's nephew. According to the victim, the brother of her mom's boyfriend would normally open the door for them after

4

school. When the boyfriend of the victim's mom would return from work, "Mr. Ramirez" would be with him.

On cross-examination, it was determined that the victim actually made two trips to Pennsylvania—one with her biological mom and one after her biological mom returned to Guatemala.

During defense counsel's extensive cross-examination of the victim regarding her trips to Pennsylvania, the State objected to defense counsel's "endless fishing expedition on a trip to Pennsylvania and coming back." The trial court denied the objection, finding the victim was on cross and defense counsel was not badgering the witness. Defense counsel resumed questioning the victim regarding her trips to Pennsylvania and then began questioning the victim as to the details of her life at home after her mom went back to Guatemala. During this line of questioning, the State asked to approach the bench and asserted an objection: "I want to object. We're going over a million details about what time she comes home from school, who picks her up - - " The trial court denied the objection, stating the following:

> Listen, the jury is as uncomfortable as you are. That's [defense counsel]'s deal. Okay? I know what you're saying. And I can see the face of the jury. They don't like it, either. But that's what he's doing, so he's doing it. Okay?

Defense counsel resumed questioning the victim about the details of her home life and then launched into the following colloquy:

5

Q. Okay. All right. Now, let's get to the hard questions, at this point. All right? Now, you've made - - You remember the little video you did over at Hearts of Hope?

A. (No response).

Q. The little video you did with the young lady questioning you about some things that Mr. Ramirez allegedly done to you?

A. Yes, sir.

Q. All right. Now, what I want to ask you is this: When did this touching thing first start?

A. When I was about seven years old.

Q. Seven years old?

A. Yes, sir.

Q. That would have been in 2013?

A. Yes, sir.

Q. Okay. Now, I know this is a hard question, but do you remember the time of the year it started? Was it in - - like, around Easter or Christmas? Thanksgiving?

A. No, sir.

Q. When did it first start?

A. I don't know, sir.

Q. You don't know?

A. No, sir.

Q. When did it end?

6

    A. I don't know, sir.

    Q. You don't know that, either?

    A. No, sir.

    Q. Who did you first tell this to?

    A. A lady - - (Witness began to cry).

When defense counsel offered to take a break, the trial judge asked the victim if she wanted to see her mom for a minute. The victim nodded in the affirmative, and the court took a ten-minute break. At the end of the break, the State informed the court that the victim had "broken down" and could not take any further questioning. Counsel for the defense then moved for dismissal of the case. The trial court, instead, ruled that much time had been "wasted" questioning the victim about trips to Pennsylvania, and counsel's questioning of the witness was going to be limited to ten-to-fifteen minutes. The trial court further stated that more time might be allowed. Counsel objected and asked for an immediate writ of review to the Third Circuit, which was denied.

After another break, the victim returned to the courtroom with her mother. The jury also returned to the courtroom, and the trial judge instructed the guardian to stand behind the victim while the victim sat on the stand. Defense counsel asked for a sidebar, during which time the State asked that the victim's guardian be allowed to stand behind her during the remainder of her testimony, which the trial court

7

allowed over objection. Counsel for Defendant then elected to not proceed with further cross-examination. The State then rested, and Defendant proceeded with his defense.

Orbelio Ramirez testified that he used to be in a relationship with the victim's mom, and the victim was like his daughter. After the victim's mom returned to Guatemala, Orbelio took care of the victim and the victim's sister for approximately six months. According to Orbelio, the Defendant is his uncle, and the Defendant did not have any responsibility for taking care of the victim and her sister. Orbelio testified that he and the Defendant worked together from 7:00 in the morning until 4:00 or 5:00 in the afternoon. Sometimes Orbelio could not give the Defendant a ride home, so another person would take the Defendant home in the afternoon. When the Defendant lived with Orbelio, there were four or five males living in the apartment. The victim, Orbelio testified, never told him the Defendant was doing something to her in a sexual way. When asked if the Defendant ever had an occasion to be alone with the victim, Orbelio replied: "Okay. I couldn't - - Honestly, I can't say that he did or didn't, because I - - It just didn't happen."

Through an interpreter, the Defendant testified at trial. He testified that he was twenty-five years old, married, with two daughters. He moved to Louisiana from Guatemala to work and support his family. When asked how he got to work, the Defendant replied that he would sometimes ride with his nephew, Orbelio. The

8

Defendant would get home from work by either riding with Orbelio or with other people. The Defendant normally got home between 4:00 and 5:00. When asked if he ever got home and found the victim alone, the Defendant replied, "No. I always found her with her daddy." The Defendant denied ever touching the victim improperly. When asked if he was ever alone with the victim, the Defendant replied, "I never was alone with her. In front of God, I say that. I don't understand why she's accusing me, because I don't understand that, at all."

## II.     Procedural Background

On September 25, 2014, petitioner, Francisco Vasquez, was charged by bill of information with one count of molestation of a juvenile, in violation of La. R.S. 14:81.2. On October 3, 2014, the Defendant entered a written plea of not guilty to the charge. Following trial, the jury convicted the petitioner of the responsive verdict of indecent behavior with a juvenile under the age of thirteen. On June 25, 2015, the trial court sentenced petitioner to twenty years at hard labor, without the benefit of parole. Petitioner moved for reconsideration on July 10, 2015, which the trial court denied with written reasons.

Vasquez filed a direct appeal in the Third Circuit Court of Appeals, arguing the following counseled assignments of error: (1) trial court erred by setting a time limitation on the defense's cross-examination of the minor victim, thereby depriving him of a full cross-examination and fair trial; (2) trial court erred in permitting the

legal guardian of the victim to stand behind her during a portion of the cross-examination, thereby depriving him of a fair trial; and (3) excessive sentence. On December 28, 2016, the Third Circuit affirmed the conviction. *State v. Vasquez-Ramirez*, 2016-325 (La. App. 3 Cir. 12/28/16) 210 So.3d 521.

Petitioner applied for writs of certiorari in the Louisiana Supreme Court and on October 27, 2017, his writ application was denied without comments. *State of Louisiana v. Vasquez-Ramirez*, 228 So.3d 1236 (La. 2017). He did not apply for certiorari in the United States Supreme Court. [Doc. 1, p. 2, ¶9(h).]

In the petition before this Court, petitioner argues that his "Sixth Amendment's confrontation clause rights were violated when the trial court set unreasonable limitations on defense counsel's ability to effectively cross-examine adverse child witness about prior accusations of similar assault by someone other than petitioner, and permitting the legal guardian of the adverse child witness to stand behind the witness during portion of the defense cross-examination of adverse child witness in presence of jury, thereby depriving petitioner of full cross-examination or permitted (sic) to test both the witness' credibility and actual knowledge of the material facts in case, and a fair trial." [Rec. Doc. 1-2, p. 3]

*Law and Analysis*

**I. Standard of Review - 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (*quoting Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the

11

Supreme Court's] decisions as of the time of the relevant state court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . .. [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II. Timeliness

Title 28 U.S.C. §2244(d)(1)(A) provides a one-year statute of limitations for the filing of an application for writ of habeas corpus by persons, such as petitioner, who are in custody pursuant to the judgment of a State court. This limitation period generally runs from "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).

The petitioner's conviction became final on January 25, 2018, when his time for seeking review in the United States Supreme Court on direct appeal expired. He did not seek post-conviction relief. His petition was filed in this court on January 11, 2018. Thus, this matter is timely.

### III. Claim

Petitioner alleges that his Sixth Amendment Confrontation Clause rights were violated when the trial court set unreasonable limitations on defense counsel's ability to effectively cross-examine the witness about prior accusations of sexual assault by someone other than the Petitioner, and that permitting the legal guardian of the witness to stand behind the witness during a portion of the cross-examination deprived him of his full cross examination.

It is well established that a defendant's right to present a defense is not unlimited. *Collins v. Cain*, 2013 U.S. Dist. LEXIS 129793 (E.D. La., Aug. 21, 2013) (*citing United States v. Al Kassar*, 660 F.3d 108, 122-23 (2d Cir. 2011), *cert. denied*, 132 S.Ct. 2374 (2012) (*citing Clark v. Arizona*, 548 U.S. 735, 769 (2006); *Taylor v. Illinois,* 484 U.S. 400, 408 (1988); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)); *Jimenez v. Walker*, 458 F.3d 130, 147 (2d Cir. 2006); *United States v. Whittington*, 783 F.2d 1210, 1218 (5th Cir. 1986). The United States Supreme Court has stated that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id. (quoting Chambers*, 410 U.S. at 294. Thus, "the Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id. (quoting Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987) (*quoting*

*Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)); *accord United States v. Wilcox*, 631 F.3d 740, 750 (5th Cir. 2011); *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005).

In *Maryland v. Craig*, 497 U.S. 836, (1990), the Supreme Court recognized that a defendant's right to confront witnesses is not absolute, but may be subject to some limitations in order to serve other important, particularized interests, such as the state's interest in protecting child witnesses from trauma. The Court stated:

> [W]e hold that, if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.
>
> The requisite finding of necessity must of course be a case-specific one: The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. In other words, if the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less intimidating surroundings, albeit with the defendant present. Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify . . . .

14

*Id*. at 855-56.

In the present case, the Third Circuit noted that Confrontation Clause errors are subject to a harmless error analysis. *State v. Vasquez-Ramirez*, 210 So.3d at 526 (*citing State v. Broadway*, 96-2659 (La. 10/19/99), 753 So.2d 801). The court inquired "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Id. (citing Del v. Van Arsdall*, 475 U.S. 673, 684 (1986)). The *Van Arsdall* court named additional factors to be considered in making such an inquiry:

1. the importance of the witness' testimony in the prosecution's case,
2. whether the testimony was cumulative,
3. the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,
4. the extent of cross-examination otherwise permitted, and,
5. the overall strength of the prosecution's case.

*Id*.

Moreover, the Third Circuit noted that the Louisiana Supreme Court has spoken on the issue, stating the following regarding the defendant's constitutional right to confront witnesses and the trial court's responsibility to exercise reasonable control over the manner of cross-examination:

> The right to confront witnesses is ensured in both the federal and state constitutions. The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." La.Const. art. 1, § 16 guarantees each accused the right "to confront and cross-examine the witnesses against him."
>
> This court has held that "[c]onfrontation means more than being allowed to confront the witnesses physically. 'The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" *State v. Robinson*, 2001-0273 p. 6 (La. 5/17/02), 817 So.2d 1131, 1135, citing *Davis v. Alaska*, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (internal citation omitted). Cross-examination has been termed "the principal means by which believability and truthfulness of testimony are tested." *Robinson*, 2001-0273 p. 6, 817 So.2d at 1135.
>
> Under the code of evidence, "a witness may be cross-examined on any matter relevant to any issue in the case, including credibility." La.C.E. art. 611(B). The trial court is empowered to exercise reasonable control over the manner of cross-examination so as to (1) ensure the effectiveness of the interrogation as a mode of ascertaining the truth; (2) avoid the needless consumption of time; and (3) protect witnesses from harassment or undue embarrassment. La. C.E. art. 611(A). "Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, or discredit, the witness." *Robinson*, 2001-0273 p. 6, 817 So.2d at 1135. The ruling of the trial court as to the scope and extent of cross-examination should not be disturbed absent an abuse of the court's broad discretion.

*Id.* at 528 *(citing State v. Draughn*, 05-1825, pp. 47-48 (La. 1/17/07), 950 So. 2d 583, 615-16, *cert. denied*, 552 U.S. 1012 (2007)).

16

The Third Circuit noted that the trial court "retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits" over the interrogation of witnesses. *Id. (citing Van Arsdall*, 475 U.S. at 679). That court, in *State v. Hillman*, 613 So.2d 1053 (La.App. 3 Cir.), writ denied, 617 So. 2d 1181 (La.1993), previously addressed a similar claim, that the trial court erred in interrupting a defendant's cross-examination of a victim. Because the victim appeared to be on the verge of breaking down, the trial court recessed the victim's testimony and allowed another witness to testify. After another witness testified, the victim returned to the witness stand and completed her testimony. This court found no error in the trial court's decision to interrupt the victim's testimony, stating:

> By interrupting the cross-examination of the ten year old victim, the trial judge gave her an opportunity to regain her composure and her ability to respond to questions. This "recess" or procedure made the questioning and presentation of the victim's testimony on cross-examination more effective for the ascertainment of the truth. There is no evidence that the victim was coached in her responses during this recess, or that the timing of the recess deprived defendant of any beneficial impact of cross-examination. Trial counsel for defendant was considerate of the difficulty the ten year old victim was having trying to recall the acts of molestation, and none of the questions on cross-examination should be considered embarrassing or harassing. The unusual circumstances of this case required the trial judge to exercise his inherent judicial powers and interrupt the witness' cross-examination in order for her to regain her composure and her ability to respond to questions. The trial judge did not limit the scope of the State's or defendant's examination of the victim. We find no error in the judge's decision to interrupt the victim's testimony.

*Hillman*, 613 So.2d at 1060.

Likewise, in the present case, the Third Circuit held that the trial court did not limit the scope of defense counsel's cross-examination of the victim. Additionally, even though the trial court told defense counsel he would be limited to ten to fifteen minutes, the trial court also suggested that it would give defense counsel a little more time if he was in the middle of questioning the victim. The appellate court found no indication that defense counsel could not have adequately cross-examined the victim in the time allotted, noting that the Defendant had cross-examined the victim for forty-five minutes before she broke down.

The Third Circuit also rejected petitioner's second claim, that his rights were violated due to the trial court allowing the victim's legal guardian to stand behind her during the remainder of his counsel's cross examination, considering the control bestowed upon the trial court by La.Code Evid. art. 611[1], along with the sanctioning by other jurisdictions of a comfort person sitting with a child witness while the child testifies." *State v. Vasquez-Ramirez,* 210 So. 3d at 529 (*citing State v. Rowray*, 860 P.2d 40 (Kan Ct. App. 1993) (court allowed a mother of two young victims to sit in close proximity of the victims during their testimonies).  Accordingly, the court

---

[1] Louisiana Code of Evidence article 611 provides:
A. Control by court. Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses. The court, however, shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:
(1) Make the interrogation and presentation effective for the ascertainment of the truth;
(2) Avoid needless consumption of time; and
(3) Protect witnesses from harassment or undue embarrassment.

held that the trial court did not abuse its discretion in allowing the victim's guardian to sit behind the victim during her testimony. *Id*. at 530.

Petitioner has failed to demonstrate that the state court's adjudication of his claim resulted in a decision that was contrary to, or involved unreasonable application of clearly established, federal law as determined by the Supreme Court of the United States, or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in those state court proceedings.

Accordingly, federal habeas relief is not warranted with respect to this claim.

*Conclusion*

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time**

**frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See, Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette, Louisiana, October 29, 2018.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE